

**ORDERED in the Southern District of Florida on March 22, 2010.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                          Chapter 15

BRITISH AMERICAN INSURANCE               Case No. 09-31881-EPK
COMPANY LIMITED,                          Case No. 09-35888-EPK
                                          (Jointly Administered)
       Debtor in a Foreign Proceeding.
_____/

## OPINION ON RECOGNITION OF FOREIGN PROCEEDINGS

Two petitioners, one appointed in an action pending in the Commonwealth of The

Bahamas ("Bahamas") and a second appointed in an action pending in Saint Vincent and the

Grenadines ("SVG"), seek recognition of their proceedings under 11 U.S.C. § 1517.  The foreign

actions relate to the same debtor, British American Insurance Company, Limited ("BAICO").

Petitioner for the Bahamas action seeks recognition of such action as either a foreign main or a

foreign nonmain proceeding.  Petitioner for the SVG action seeks recognition of such action as a

foreign nonmain proceeding.

On the evidence presented, the Court finds that both foreign actions are "foreign proceedings" as defined in 11 U.S.C. § 101(23).  Thus, each proceeding meets the threshold for recognition under 11 U.S.C. § 1517.

With regard to the Bahamas proceeding, the petitioner's activities as court-appointed judicial manager are the only evidence offered to support petitioner's allegations that BAICO has the center of its main interest or an establishment in the Bahamas.  In the circumstances of this case, such evidence does not support a finding that BAICO has the center of its main interest or an establishment in the Bahamas.  Consequently, the Court denies the petition to recognize the Bahamas proceeding as a foreign main or foreign nonmain proceeding.

With regard to the SVG proceeding, the Court finds that BAICO has an establishment in SVG and recognizes the SVG proceeding as a foreign nonmain proceeding.

The petitions request coordination of foreign proceedings under 11 U.S.C. § 1530.  Section 1530 contemplates coordination of multiple foreign proceedings recognized under chapter 15.  The Court has recognized only a single foreign nonmain proceeding, so relief under 11 U.S.C. § 1530 is denied.

To the extent the petition relating to the Bahamas proceeding requests recognition of multiple foreign actions, through a single petition, such relief is denied.  11 U.S.C. §§ 1504, 1509, and 1515 require a separate petition for each foreign action for which recognition is sought.  The Court accepts the petition as requesting recognition only of the proceeding pending in the Bahamas.

Petitioner for the SVG proceeding moves for relief under 11 U.S.C. § 1521.  The Court will conduct a further hearing to address such request.  In the meantime, the interim relief granted under 11 U.S.C. § 1519 will remain in effect pending order of the Court.

## I. BACKGROUND

On October 9, 2009, Juan M. Lopez a/k/a John M. Lopez ("Mr. Lopez"), as duly

appointed Judicial Manager for BAICO, filed an application (the "Bahamas Petition") with this

Court pursuant to sections 1515 and 1517 of 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").[1]

The Bahamas Petition requests entry of an order recognizing a judicial action (the "Bahamas

Proceeding") pending before the Commercial Division of the Supreme Court of the

Commonwealth of The Bahamas (the "Bahamas Court") as a foreign main proceeding or, in the

alternative, as a foreign nonmain proceeding.  Upon recognition, the Bahamas Petition requests

relief under sections 1520 and/or 1521, as well as coordination of multiple foreign proceedings

under section 1530.

On October 29, 2009, this Court entered an order [DE 11] granting provisional relief

under sections 105(a) and 1519 including, without limitation, a stay of execution against assets

of BAICO.  The provisional relief granted by that order remains in effect subject to further order

of this Court [DE 24].

On November 6, 2009, the Court commenced an evidentiary hearing on the Bahamas

Petition.  The presentation of evidence was not complete on that date and so the Court continued

the evidentiary hearing.

On November 23, 2009, Brian Glasgow ("Mr. Glasgow" and with Mr. Lopez, the

"Petitioners"), as duly appointed Judicial Manager for BAICO, filed a petition (the "SVG

Petition" and with the Bahamas Petition, the "Petitions") pursuant to sections 1515 and 1517.

The SVG Petition requests entry of an order recognizing a judicial action (the "SVG

Proceeding") pending before the Eastern Caribbean Supreme Court in the High Court of Justice

---

[1] Unless otherwise noted, references to "section" or "sections" are references to the relevant section or sections of the Bankruptcy Code.

Saint Vincent and the Grenadines (the "SVG Court") as a foreign nonmain proceeding. Upon

recognition, the SVG Petition requests relief under section 1521, as well as coordination of

multiple foreign proceedings under section 1530.

On December 1, 2009, the Court held a preliminary hearing on the SVG Petition and a

hearing on a motion to jointly administer the two cases relating to the Petitions. The Court

determined to jointly administer the cases and to conduct an evidentiary hearing on the SVG

Petition concurrently with a continued evidentiary hearing on the Bahamas Petition on February

1, 2010.

Green Island Holdings, LLC ("Green Island"), a creditor of BAICO, opposes recognition

of both the Bahamas Proceeding and the SVG Proceeding.

The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and

1334(b). These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in

this district under 28 U.S.C. § 1410.


## II.  FACTS

*Debtor BAICO*

BAICO is an insurance company chartered under the laws of the Bahamas.  It has or had

branch operations in Anguilla, Antigua and Barbuda, Bermuda, The Cayman Islands, Dominica,

Guyana, Grenada, Montserrat, Saint Kitts and Nevis, Panama, Saint Lucia, Curacao, the Turks

and Caicos Islands, and SVG.  BAICO also operates or operated through subsidiaries in

Barbados, Trinidad and Tobago ("Trinidad"), Curacao, Aruba, the Turks and Caicos Islands, and

the British Virgin Islands.

*Creditor Green Island*

Green Island is a Florida limited liability company.  It is the plaintiff in an action against BAICO and British American Isle of Venice (BVI), Ltd. in the United States District Court for the Southern District of Florida [BAICO Ex. 114], and is the plaintiff in an action against BAICO in the Ninth Judicial Circuit in and for Osceola County, Florida.  [09-31881 DE 2 Pet. ¶ 22.]


*BAICO Operations Before Appointment of Petitioners*

For several years prior to the filing of the Petitions in this Court, and thus prior to appointment of the Petitioners by the Bahamas and SVG Courts, BAICO (a) did not issue insurance policies in or from the Bahamas, (b) did not sell policies to residents of the Bahamas, (c) did no claims adjustment or claims processing in the Bahamas, and (d) had no employees in the Bahamas.  At the time of Mr. Lopez's appointment by the Bahamas Court, BAICO had no bank accounts in the Bahamas.  For at least a year prior to Mr. Lopez's appointment, none of BAICO's officers or directors resided in the Bahamas.  As of Mr. Lopez's appointment, BAICO's only ties to the Bahamas were that it was chartered in that country and that it had a registered agent in the Bahamas (a law firm).  The registered agent maintained required corporate information for BAICO.  Mr. Lopez confirmed that at the time of his appointment BAICO was not transacting business in the Bahamas.

Nearly all of BAICO's operations were undertaken by subsidiaries in Trinidad that acted as BAICO's agents.  BAICO has two subsidiaries incorporated under the laws of and operated in Trinidad, British-American Insurance Company (Trinidad) Limited ("BAT") and BA Management Services Limited ("BA Management" and with BAT, the "Trinidad Subsidiaries").

BAICO owns 99.86% of BAT and 100% of BA Management.    [BAICO Ex. 103 at 26, 141, 144.]  Prior to 2005, BAT was the operational hub of the BAICO group of companies, performing various administrative functions.   In 2005, to achieve certain tax benefits, BA Management was formed to assume this role; it commenced operations in 2006.   [BAICO Ex. 103 at 145.]  BAICO and BA Management are parties to a *Services Agreement* (the "Services Agreement").  [BAICO Ex. 107.]   Under the Services Agreement, BA Management agreed to provide all financial, administrative, marketing, information technology, investment, actuarial, and legal services for BAICO.  BA Management's responsibilities include policy administration and claims processing for the BAICO group.  [BAICO EX. 103 at 145.]  Mr. Lopez testified that BAICO paid for these services and the cost was shared among BAICO's various branch operations.

Lennox McCartney, the Insurance Commissioner for the Bahamas, testified that certain members of BAICO's board of directors met with him in the Bahamas in 2008 and 2009, at his request, to address the company's financial difficulties.  Other than a meeting convened on April 20, 2009 for the purpose of changing the company's registered office [BAICO Ex. 108], these meetings with the Insurance Commissioner were the only business conducted by BAICO board members in the Bahamas in recent years.  The Insurance Commission then instituted restrictions on BAICO intended to "ring fence" BAICO's operations to insulate against further loss.

As of June, 2009, BAICO had eight directors.  Four were resident in Trinidad, one in the United States, one in Barbados, one in Grenada, and one in Saint Kitts.  On June 30, 2009, the remaining members of BAICO's board of directors resigned.

*Appointment of Mr. Lopez by Bahamas Court*

By order dated September 8, 2009 (the "Bahamas Order of Appointment") [BAICO Ex. 17], the Bahamas Court appointed Mr. Lopez as Judicial Manager for BAICO under Section 77(1)(b) of the Insurance Act, 2005 (the "Bahamas Insurance Act").  The Bahamas Order of Appointment empowers Mr. Lopez to:  (a) ascertain the assets of BAICO and their location and take steps to obtain possession of such assets; (b) carry on all or any portion of the business of BAICO so far as may be necessary to preserve the value of BAICO including process claims against BAICO, effect reinsurance recoveries, and pay any class of creditor and any claims, settlements, and expenses in full; (c) seek the assistance of the United States Bankruptcy Court under the provisions of chapter 15 or any other sections of the Bankruptcy Code or take such other action necessary to secure assets of BAICO, including the assets of BAICO's subsidiaries; (d) incur and pay for all reasonable expenses and disbursements in connection with the running, administration, and management of BAICO's records, affairs, and offices; (e) retain or employ professionals or others if appropriate to assist in running the affairs and business of BAICO and to ascertain and quantify the assets, records, and liabilities of BAICO; (f) render invoices for Mr. Lopez's own remuneration at usual and customary rates; (g) take all actions necessary to see, review, secure, and take possession of any books, papers, writings, documents and records relating to BAICO that are located in the offices of auditors or any other person and bring the same under his control and, where appropriate, into the jurisdiction of the Bahamas; (h) take all actions necessary to see, review, secure, and take possession of the claims and financial records of BAICO; (i) open, operate, and maintain bank accounts in the name of the Judicial Manager or BAICO as necessary; (j) conduct investigations and obtain information as is necessary to locate, protect, secure, take possession of, collect, and get in the assets of BAICO and determine

liabilities, or to enable the judicial management to proceed in a speedy and efficient manner; (k) do all such things as may be necessary or expedient for the protection of BAICO's property or assets; (l) enter into commutations, settlements, and compromises with any creditors and any debtors of BAICO; (m) employ and dismiss any employees, consultants, and agents of BAICO; (n) discharge rent, salaries of any employees of BAICO, and other current expenses of BAICO; (o) grant or accept a surrender of a lease or tenancy of any of BAICO's property, surrender any lease, and take a lease or tenancy of any property required or convenient for the business of BAICO; (p) terminate, complete, or perfect as advised any contracts or transactions relating to the business of BAICO; (q) effect insurance in connection with the management and maintenance of the business, property, and assets of BAICO; (r) do all acts and execute in the name and on behalf of BAICO all deeds receipts or other documents; (s) rank and claim in the bankruptcy, liquidation, or insolvency of any person indebted to BAICO and receive dividends, and accede to trust deeds for the creditors of any such person; (t) manage, adjust, and pay claims against BAICO and/or its policyholders and enter into agreements with third parties for the provision of claims handling and related services to BAICO in relation to BAICO's business; (u) retain and employ barristers, attorneys, solicitors, or other lawyers in any jurisdiction in which BAICO has operations through its subsidiaries or branches and in any other jurisdictions as the Judicial Manager deems appropriate for the purpose of advising and assisting the Judicial Manager in the execution of his powers or in any legal or arbitration proceedings; (v) consider any legal or arbitration proceedings in which BAICO either is a party or of which BAICO presently has conduct or which BAICO would, but for the Bahamas Proceeding, take conduct and pay all fees and expenses and give all instructions and take such action as may be necessary to continue to prosecute or to defend such proceedings or to apply for a stay of such proceedings;

8

(w) consider and if thought advisable commence such actions as may be necessary to protect, recover, or obtain assets and or monies belonging or due to BAICO and commence all other proceedings on BAICO's behalf as may be necessary to have the Judicial Manager's appointment recognized and to protect the assets of BAICO; (x) borrow money from time to time for the proper operation and functioning of BAICO's business; and (y) do all such things reasonably and properly incidental to the exercise of the foregoing powers.

The Bahamas Order of Appointment provides that Mr. Lopez is BAICO's legal representative in respect to BAICO's equity investments, including BAICO's investments in subsidiaries and minority interests.  Mr. Lopez has all rights and privileges afforded to shareholders including the right to vote BAICO's shares at any meetings held by companies where BAICO has a shareholding interest.  If appropriate, in Mr. Lopez's discretion, he is empowered to take management control of any of BAICO's subsidiaries by voting BAICO'S shares and removing and appointing directors and officers as he sees fit.

The Bahamas Order of Appointment requires Mr. Lopez to provide an interim report to the Bahamas Court stating which of the following courses is most advantageous to the general interests of the policyholders of BAICO:

    (a) The transfer of all or any part of the insurance business of [BAICO] to some other company in pursuance of a scheme to be prepared by the [Judicial Manager] in accordance with the Insurance Act, 2005,

    (b) The carrying out of its business by [BAICO] either unconditionally or subject to such conditions as the [Judicial Manager] may suggest,

    (c) The winding up of [BAICO], or

    (d) Such other course as the [Judicial Manager] considers advisable.

[BAICO Ex. 17.]

Mr. Lopez testified that while policy holders have priority under Bahamas law he has a fiduciary duty to all creditors. Mr. Lopez stated that he has a duty to maximize recovery for all creditors of BAICO.

*Appointment of Mr. Glasgow by SVG Court*

By order entered August 4, 2009 (the "SVG Order of Appointment") [BAICO Ex. 86], the SVG Court appointed Mr. Glasgow as Judicial Manager for BAICO under Section 52 of the Insurance Act, No. 45 of 2003 of the Laws of Saint Vincent and the Grenadines (the "SVG Insurance Act").

The SVG Order of Appointment places the affairs, business, and property of BAICO in SVG under Judicial Management. The SVG Order of Appointment stays all actions, proceedings, and claims against BAICO. It empowers Mr. Glasgow, as Judicial Manager, to: (a) ascertain the assets of BAICO and take all steps necessary to obtain possession of such assets; (b) incur and pay for all reasonable expenses and disbursements in connection with the running, administration, and management of BAICO's records, affairs, and offices; (c) if appropriate, retain or employ professionals or others to assist in running the affairs and business of BAICO and for the purposes of ascertaining and quantifying the assets, records, and liabilities of BAICO, such employment being either in the jurisdiction of SVG or any other jurisdiction where BAICO conducted business or entered into contracts with third parties; (d) render invoices for their remuneration at their usual and customary rates; (e) take all actions necessary to see, review, secure, and take possession of any books, papers, writings, documents, and records relating to BAICO that are located in the offices of its auditors or any other person and to bring the same under his control; (f) take all actions necessary to see, review, secure, and take possession of the

10

claims and financial records of BAICO located in the offices of BAICO or any company affiliated with BAICO or any other person and to bring the same under his control; (g) open, operate, and maintain bank accounts in the name of the Judicial Manager or BAICO as may be necessary; (h) conduct such investigations and obtain such information as is necessary to locate, protect, secure, take possession of, collect, and get in the assets of BAICO and determine liabilities, or to enable the Judicial Management to proceed in a speedy and efficient manner; (i) do all such things as may be necessary or expedient for the protection of BAICO's property or assets; (j) enter into commutations, settlements, and compromises with any creditors and any debtors of BAICO; (k) employ and dismiss any employees of BAICO; (l) discharge rent, salaries of any employees of BAICO, and other current expenses of BAICO; (m) grant or accept a surrender of a lease or tenancy of any of the property of BAICO and take a lease or tenancy of any property required or convenient for the business of BAICO; (n) terminate, complete, or perfect as advised any contracts or transactions relating to the business of BAICO; (o) effect insurance in connection with the management and maintenance of the business, property, and assets of BAICO; (p) do all acts and execute in the name and on behalf of BAICO all deeds receipts or other documents; (q) rank and claim in the bankruptcy, liquidation, or insolvency of any person indebted to BAICO and receive dividends, and accede to trust deeds for the creditors of any such person; (r) manage, adjust, and pay claims against BAICO and/or its policyholders and enter into agreements with third parties for the provision of claims handling and related services to BAICO in relation to BAICO's business; (s) carry on all or any portion of the business of BAICO so far as may be necessary to process claims against BAICO, to effect reinsurance recoveries, and to pay any class of creditor and any claims, settlements, and expenses in full; (t) retain and employ barristers, attorneys, solicitors, or other lawyers in

11

jurisdictions as the Judicial Manager sees fit for the purpose of advising and assisting the Judicial Manager in the execution of his powers or in any legal or arbitration proceedings; (u) consider any legal or arbitration proceedings wherever situate in which BAICO either is a party or of which BAICO presently has conduct or which BAICO would, but for the SVG proceeding, take conduct and pay all fees and expenses, give all instructions in connection therewith, and take such action as may be thought necessary to continue to prosecute or to defend such proceedings or to apply for a stay of such proceedings; (v) consider and if thought advisable commence such actions as may be necessary to protect, recover, or obtain assets and/or monies belonging or due to BAICO and commence all other proceedings as may be necessary to have his appointment recognized and protect the assets of BAICO; (w) borrow such money from time to time as he may consider necessary or desirable for the proper operation and functioning of BAICO's business including any monies borrowed or to be borrowed for expenses incurred by the Judicial Manager, subject to the approval of the Minister of Finance, while operating by virtue of his appointment under the SVG Order of Appointment; and (x) do all such things reasonably and properly incidental to the exercise of the foregoing powers.

The SVG Order of Appointment requires Mr. Glasgow to provide an interim report to the SVG court stating which of the following courses is most advantageous to the general interests of the policyholders of the company:

> (a) The transfer of the business of the company to some other company in pursuant of a scheme to be prepared in accordance with the Insurance Act (whether the policies of the business continue for the original sums insured, with the addition of bonuses that are attached to the policies or for reduced amounts);

> (b) The carrying out of its business by the company (whether the policies of the business continue for the original sums insured, with the addition of bonuses that attach to the policies, or for reduced amounts);

> (c) The winding up of the company or any part of the business of the company; or

(d) The dealing with part of the business of the company in one manner, and with another part in another company.

[BAICO Ex. 86.]


*Other Proceedings for BAICO*

BAICO is subject to judicial proceedings in numerous countries.  Foreign courts have appointed judicial managers, provisional liquidators, or controllers, for BAICO and related entities, as follows:

| Date | Court | Name (Position) |
|---|---|---|
| July 31, 2009 | The Eastern Caribbean Supreme Court in the High Court of Justice Antigua and Barbuda | Cleveland Seaforth (Judicial Manager) |
| July 31, 2009 | The Eastern Caribbean Supreme Court in the High Court of Justice (Anguilla Circuit) | Claudel Romney (Administrator) |
| July 31, 2009 | The Eastern Caribbean Supreme Court in the High Court of Justice Federation of Saint Christopher and Nevis | Lisa Taylor (Judicial Manager) |
| July 31, 2009 | The Eastern Caribbean Supreme Court in the High Court of Justice Saint Lucia | Frank Myers (Judicial Manager) |
| August 3, 2009 | The Supreme Court of Bermuda Commercial Court Companies (Winding-Up) | Stephen Lowe (Provisional Liquidator) |
| August 5, 2009 | The Eastern Caribbean Supreme Court in the High Court of Justice Montserrat | Casey McDonald (Judicial Manager) |
| August 5, 2009 | The Supreme Court of Grenada and the West Indies Associated States High Court of Justice | Reuben M. John (Judicial Manager) |
| September 15, 2009 | The Grand Court of the Cayman Islands | Simon Whicker and Kris Beighton (Controllers) |
| October 7, 2009 | The Supreme Court of the Turks and Caicos Islands | Juan M. Lopez (Judicial Manager) |

[BAICO Ex. 18-27; 09-31881 DE 2 Pet. ¶¶ 8-10.]

*Reports of Mr. Lopez and Mr. Glasgow*

Mr. Lopez submitted a report to the Bahamas Court, dated November 27, 2009, pursuant to section 81(1) of the Bahamas Insurance Act (the "Lopez Report"). [BAICO Ex. 103.] Reports of judicial managers appointed in the "EC Branches"[2] are attached to the Lopez Report as appendices. Included among these is a report of Mr. Glasgow submitted in the SVG Proceeding, dated October 9, 2009, pursuant to section 52 of the SVG Insurance Act (the "Glasgow Report"). The Glasgow Report was separately admitted as BAICO Exhibit 77. The Lopez Report and the Glasgow Report reflect extensive examinations of BAICO, its business operations, and its assets and liabilities. Both reports recommend a course of action by which BAICO will be restructured in part using a newly formed entity to assume certain of BAICO's liabilities. [BAICO Ex. 77 at 48-53; BAICO Ex. 103 at 207-17.]

The Lopez Report includes a detailed liquidation analysis for BAICO as of June 30, 2009. The liquidation analysis reflects all assets and liabilities of BAICO and its branches other than the Cayman branch, which has been sold, and the Panama, Bermuda, and Curacao branches, which are estimated as having negligible net value. Recovery on BAICO's investment in its subsidiaries is estimated at $5 million. [BAICO Ex. 103 at 44-45.]

The EC Branches represent the vast majority of both BAICO's assets and its liabilities. [BAICO Ex. 103 at 54.] Before adjustments taken for purposes of the liquidation analysis, the EC Branches' assets represent about 83.7% of BAICO's total assets, and the EC Branches' liabilities represent about 77.3% of BAICO's total liabilities. [BAICO Ex. 103 at 44-45.] The Lopez Report includes separate data "for the small number of transactions that were not directly attributable to BAICO's branches or subsidiaries," referred to in the report as "BAICO stand-

---

[2] The Eastern Caribbean Branches, or "EC Branches," comprise branch operations in Anguilla, Antigua, Dominica, Grenada, Montserrat, Saint Kitts, Saint Lucia, and SVG. [BAICO Ex. 103 at 114.]

alone." [BAICO Ex. 103 at 45, 64.] Before adjustments, BAICO stand-alone represents about 14.2% of BAICO's total assets and 21.1% of BAICO's total liabilities. The liquidation analysis includes adjustments for various items based on Mr. Lopez's estimation with regard to liquidation value. The adjustments are presented in such a way that it is not apparent whether the adjustments are to be applied to the EC Branches, other branches, or "BAICO stand-alone." However, even if the adjustments are applied to the EC Branches assets to the greatest extent possible, the EC Branch assets account for approximately 78% of the total adjusted assets shown in the liquidation analysis. From the Lopez Report and the other evidence presented, it is not possible to determine whether a significant portion of BAICO's realizable assets are located in any particular EC Branch country. The Court can only discern that most of BAICO's assets are not located in the Bahamas.

Mr. Lopez's liquidation analysis takes into account the fact that BAICO policyholders will be paid in preference to other unsecured creditors. [BAICO Ex. 103 at 43.] He concludes that in a liquidation of BAICO policyholders will receive a dividend of between 15 and 35 cents on the dollar and non-policyholder, unsecured creditors will not receive any distribution. Because BAICO has policies that will not mature for many years, any distribution will be significantly delayed. [BAICO Ex. 103 at 43-46.]

*December Orders of Bahamas Court and SVG Court*

By order dated December 17, 2009 (the "December Bahamas Order"), the Bahamas Court accepted Mr. Lopez's core findings that BAICO is insolvent and should be reorganized and restructured where possible and then wound up. The Bahamas Court directed Mr. Lopez: (1) to continue to negotiate with third parties to sell, transfer, or dispose of the insurance

business, or other assets and liabilities of the branches and subsidiaries of BAICO; (2) to transfer or sell the shares of BAT; (3) to take steps to protect the assets of BAICO and its subsidiaries in the United States by obtaining recognition of the Bahamas Proceeding; (4) to effect the winding-up of BAICO's non-insurance subsidiaries; (5) to investigate related party and other antecedent transactions, the conduct of management and the directors of BAICO, and the conduct of third parties providing services to and conducting transactions with BAICO; (6) to commence legal proceedings against CL Financial Ltd. ("CL Financial"), the parent company of BAICO, in respect of sums presently due to BAICO; (7) to investigate the assets and liabilities of BAICO's Employee Pension Plan; and (8) to effect the transfer of data and systems from Trinidad to a new administrative hub in the Bahamas.  [BAICO Ex. 106.]  At the February 1, 2010 hearing, Mr. Lopez testified that his current role involves carrying out the reorganization ordered by the Bahamas Court with a goal toward an eventual winding up of BAICO.

By order dated December 18, 2009 (the "December SVG Order"), based on the recommendations contained in the Glasgow Report, the SVG Court ordered pursuant to section 54(2) of the SVG Insurance Act that:  (1) there be a reorganization of BAICO by the transfer of its insurance and investment business to a new company in pursuance of a scheme of arrangement to be prepared in accordance with section 56 of the SVG Insurance Act; (2) the scheme prepared in accordance with the SVG Insurance Act be a plan making provision for the funding of a new company; (3) Mr. Glasgow is authorized to work with other judicial managers or persons similarly appointed, the governments of the Organisation of Eastern Caribbean States, and the Eastern Caribbean Central Bank, to develop such a scheme and make arrangements for any required funding; (4) Mr. Glasgow shall consider and do all things necessary with respect to the establishment of the new company and the transfer of assets and liabilities of BAICO into the

new company; and (5) Mr. Glasgow is to continue to negotiate with third parties to sell or

dispose of its property and health insurance business and to take such action that may be required

to effect such sales or disposals subject to the approval of the SVG Court.


*BAICO Operations After Appointment of Petitioners*

Although Mr. Lopez expects to move BAICO's administrative operations to the

Bahamas, Mr. Lopez's own report to the Bahamas Court, filed after the petition here, confirms

that BAICO's administrative function remains in Trinidad.  [BAICO Ex. 103 at 216.]  The

Glasgow Report similarly states that BAICO's "main business operation is now located in

Trinidad & Tobago since its majority shares were acquired by the Trinidadian company [CL

Financial] in 1997."  [BAICO Ex. 77 at 5.]   BA Management continues to serve the BAICO

group under the terms of the Services Agreement.  [BAICO Ex. 103 at 145.]  The services

undertaken by BA Management constitute essentially all of BAICO's day-to-day management

operations.  BAICO's operations in Trinidad, through the Trinidad Subsidiaries, form a hub from

which all of BAICO's operations are overseen.  The Trinidad Subsidiaries control BAICO's

computer network access and business software, including accounting data.  The Trinidad

Subsidiaries provide remote information technology support.  [BAICO Ex. 77 at 59.]  The SVG

branch is essentially a "local branch sales and administrative unit supported by a group service

company, [the Trinidad Subsidiaries]."  [BAICO Ex. 77 at 58.]  The Trinidad Subsidiaries

process application forms for insurance products sold through the SVG branch.  [*Id.*]  The

Trinidad Subsidiaries in turn process, adjust, and approve claims routed through the SVG branch.

The Trinidad Subsidiaries then issue checks in payment of claims, which are forwarded to the

SVG branch for distribution to policyholders.  [*Id.*]  Employment contracts for employees of the

SVG branch are maintained at the Trinidad Subsidiaries.  [BAICO Ex. 77 at 59.]  The Trinidad Subsidiaries administer the employee benefits and pension plans for the SVG branch employees.  [BAICO Ex. 77 at 60.]  These are only examples of the extent to which the Trinidad Subsidiaries operate BAICO.  The great weight of evidence supports the conclusion that BAICO's business remains centered in Trinidad.

The Petitioners note that BAICO has no branch operations in Trinidad, where it acts through its wholly-owned Trinidad Subsidiaries, that BAICO itself does not have an insurance license in Trinidad, and that BAICO has no physical assets in Trinidad in its own name.  Petitioners argue that the actions of a subsidiary, such as BA Management, are the actions of a separate corporate entity and should not be attributed to its parent.  This argument ignores the broad terms of the Services Agreement and the overwhelming evidence in this case.  BAICO delegated its primary business operations to the Trinidad Subsidiaries, and the Trinidad Subsidiaries continue to oversee essentially all of BAICO's ongoing business.

In SVG, BAICO has an administrative staff of nine employees who now act under Mr. Glasgow's control.  [Nov. 6, 2009 Tr. 163; BAICO Ex. 77 at 59.]  BAICO engages in excess of sixteen full time agents to conduct its businesses in SVG.  The SVG branch accepts premiums on old business and conducts all attendant business related to the operation of an insurance company.  [Nov. 6, 2009 Tr. 163-64.]

Since their appointment, Mr. Lopez and Mr. Glasgow established bank accounts for BAICO in their respective jurisdictions, engaged lawyers, accountants, and other professionals, and completed extensive investigations of BAICO, its assets and its liabilities.  Mr. Lopez oversaw the negotiation and closing of a sale of certain BAICO assets in the Cayman Islands,

which sale was approved by the Bahamas Court.  [BAICO Ex. 77 at 12-16; BAICO Ex. 103 at 47-59.]

*BAICO Web Site*

After his appointment, Mr. Lopez added a notice of his appointment under the Bahamas Insurance Act to the home page of BAICO's web site.  [Green Island Ex. 11.]  The notice lists a number of other court-appointed representatives in Caribbean countries.  Although the notice includes Mr. Lopez's mailing address, it states:  "At this time, we recommend you contact the local BAICO office or Court appointed office holder, for further information."   The web site provides telephone contact information for offices in various countries, including a "Head Office" in Trinidad, but none for the Bahamas other than Mr. Lopez's mailing address.

## III.  ANALYSIS

These matters arise under the relatively new provisions of chapter 15 of the Bankruptcy Code, entitled "Ancillary and Other Cross-Border Cases."  11 U.S.C. § 1501 *et seq.*  Enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, chapter 15 replaced section 304 of the Bankruptcy Code.  Section 1501(a) sets out the goals of chapter 15:

> (a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>
> (1) cooperation between—
>
> (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>
> (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

(2) greater legal certainty for trade and investment;

(3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4) protection and maximization of the value of the debtor's assets; and

(5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

Chapter 15 represents a nearly verbatim enactment of the Model Law on Cross-Border Insolvency (the "Model Law") promulgated by the United Nations Commission on International Trade Law ("UNCITRAL") in 1997.  11 U.S.C. § 1501(a); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 43 (Bankr. S.D.N.Y. 2008) ("The language of chapter 15 tracks the Model Law, with some modifications that are designed to conform the Model Law with existing United States law.").  The Model Law has been enacted in the following countries:  Australia (2008), British Virgin Islands, overseas territory of the United Kingdom of Great Britain and Northern Ireland (2003), Canada (2009), Colombia (2006), Eritrea (1998), Great Britain (2006), Japan (2000), Mauritius (2009), Mexico (2000), Montenegro (2002), New Zealand (2006), Poland (2003), Republic of Korea (2006), Romania (2003), Serbia (2004), Slovenia (2007), South Africa (2000), and the United States of America (2005).  UNCITRAL, Status: 1997 - Model Law on Cross-border Insolvency,

http://www.uncitral.org/uncitral/en/uncitral_texts/insolvency/1997Model_status.html (last visited Mar. 22, 2010).

International uniformity is a primary goal of the Model Law and thus of chapter 15.  11 U.S.C. §§ 1501(a), 1508.  UNCITRAL expressed the desire that the Model Law be enacted by adopting countries with as few changes as possible "in order to achieve a satisfactory degree of

harmonization and certainty."  United Nations Commission on International Trade Law

(UNCITRAL), Cross-Border Insolvency:  Guide to Enactment of the UNCITRAL Model Law

on Cross-Border Insolvency, ¶ 12, U.N. Doc. A/CN.9/442 (Dec. 19, 1997) [hereinafter "Guide to

Enactment"].[3]  When implementing chapter 15, section 1508 requires the Court to "consider its

international origin, and the need to promote an application of this chapter that is consistent with

the application of similar statutes adopted by foreign jurisdictions."  11 U.S.C. § 1508.  The

House Report contemplates courts looking to the Guide to Enactment and the Reports cited

therein to aid the courts in achieving a uniform interpretation of chapter 15.  H.R. Rep. No. 109-

31, pt. 1, at 109-10 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 172-73 (the "House Report").

Sections 1515 through 1518, inclusive, set out a rigid procedure for recognition of a

proceeding pending in a foreign country.  *In re Bear Stearns High-Grade Structured Credit*

*Strategies Master Fund, Ltd.*, 374 B.R. 122, 132 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325

(2008).  This recognition procedure is completely new to the Bankruptcy Code.  It reflects a

policy determination by UNCITRAL and Congress that this Court should not assist a

representative of a foreign action unless the debtor has a sufficient presence in the country in

which the foreign action is taking place.  *In re Bear Stearns High-Grade Structured Credit*

*Strategies Master Fund, Ltd.*, 389 B.R. 325, 333-34 (S.D.N.Y. 2008) (citing House Report at 110

(2005); § 1509(b)(3)).

> If the debtor does not have its center of main interests or at least an establishment
> in the country of the foreign proceedings, the bankruptcy court should not grant
> recognition and is not authorized to use its power to effectuate the purposes of the
> foreign proceeding.  Implicitly, in such an instance the debtor's liquidation or
> reorganization should be taking place in a country other than the one in which the
> foreign proceeding was filed to be entitled to assistance from the United States.

*Id.* at 334 (internal citations omitted).

---

[3] The UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment is available at
http://www.uncitral.org/pdf/english/texts/insolven/insolvency-e.pdf.

The general principles of comity that governed acknowledgement of cross-border matters under former section 304 no longer apply to recognition under chapter 15. *Lavie v. Ran*, 406 B.R. 277, 282 (S.D. Tex. 2009).

> Approaches based purely on the doctrine of comity or on *exequatur* do not provide the same degree of predictability and reliability as can be provided by specific legislation, such as the one contained in the Model Law, on judicial cooperation, recognition of foreign insolvency proceedings and access for foreign representatives to courts.

Guide to Enactment ¶ 16. Except with regard to certain relief that may be accorded after recognition of a foreign proceeding, it is not appropriate to rely on case law under former section 304. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 132; House Report at 109-10, 119.

Even in the absence of Green Island's objection to recognition, the Court must review the Petitions in light of the requirements of chapter 15. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 129-30. If a petition for recognition is unopposed, the Court may rely on certain presumptions provided by section 1516. Even so, the Court has a duty to review each petition to determine whether it satisfies all requisites for recognition. *Id.*

A person seeking recognition of a proceeding in a foreign country must file a petition for recognition under sections 1504, 1509, and 1515. Upon filing of a petition for recognition, the court will set a hearing on notice as required by Fed. R. Bankr. P. 2002(q).

Section 1517 sets out the substantive test for recognition of a foreign proceeding. It provides as follows:

> (a) Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if—

(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

(2) the foreign representative applying for recognition is a person or body; and

(3) the petition meets the requirements of section 1515.

(b) Such foreign proceeding shall be recognized—

(1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or

(2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending.

(c) A petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time. Entry of an order recognizing a foreign proceeding constitutes recognition under this chapter.

(d) The provisions of this subchapter do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition.  A case under this chapter may be closed in the manner prescribed under section 350.

11 U.S.C. § 1517.

In ruling on a petition for recognition under section 1517, the Court must address the following:

1.  Would the proposed recognition be "manifestly contrary to the public policy of the United States" as contemplated under section 1506?

2.  Is the subject foreign action a "foreign proceeding" as defined in 11 U.S.C. § 101(23)?

3.  Is the foreign representative who filed the petition for recognition a person or body?

4.  Does the petition meet the formal requirements of section 1515?

5.  Is the foreign proceeding pending in the country where the debtor has the center of its main interest and thus a foreign main proceeding?

6.  Does the debtor have an establishment in the foreign country where the proceeding is pending, thus making the foreign proceeding a foreign nonmain proceeding?

Items 1, 3, and 4 are quickly disposed of in the present case.  There is no reason to believe that the proposed recognition of either proceeding is contrary to public policy.  Mr. Lopez and Mr. Glasgow are persons.  Lastly, the Petitions and supporting documentation filed by Mr. Lopez and Mr. Glasgow meet the formal requisites of section 1515.  The Court will address in detail whether the Bahamas Proceeding and the SVG Proceeding are foreign proceedings and, if so, whether they are foreign main or foreign nonmain proceedings.

## A.  Foreign Proceeding

Section 1517(a) and the definitions of "foreign main proceeding" and "foreign nonmain proceeding," found in section 1502, each incorporate the defined term "foreign proceeding."  As a preliminary matter, the Court must determine whether the Bahamas Proceeding and the SVG Proceeding constitute foreign proceedings.  "The term 'foreign proceeding' means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).  Parsing this definition, the proceeding in question must:  (1) be collective in nature; (2) be judicial or administrative ; (3) be pending in a foreign country; (4) be under a law relating to insolvency or adjustment of debt; (5) subject the

assets and affairs of the debtor to the control and supervision of a foreign court; and (6) be for the purpose of reorganization or liquidation.

1.  Collective in Nature

Green Island argues that the Bahamas Proceeding and the SVG Proceeding are not "collective" within the meaning contemplated by section 101(23) because the proceedings allegedly were initiated only to protect the interests of BAICO's policyholders, a single class of creditors, to the exclusion of other creditors of BAICO.  According to Green Island, although the orders appointing Mr. Lopez and Mr. Glasgow as judicial managers permit them to deal with other creditors, they are not obligated to act for the benefit of those creditors.

Green Island points to a provision in the Bahamas Order of Appointment requiring Mr. Lopez to recommend courses of action that "are most advantageous to the general interests of the policy holders of [BAICO]."  Green Island cites a deposition of Mr. Lopez where he agreed that the primary purpose of his appointment was to take steps that are in the best interest of the policyholders.  Finally, Green Island argues that neither Bahamas law nor orders in the Bahamas Proceeding require Mr. Lopez to provide notice to creditors of his appointment as judicial manager or of Mr. Lopez's proposed actions even when subject to approval of the Bahamas Court.

Similarly, although the order appointing Mr. Glasgow as judicial manager permits him to deal with other creditors, Green Island alleges he is not obligated to act for the benefit of those creditors.  Green Island points out that at the initial evidentiary hearing in this case, prior to the SVG Petition, Mr. Glasgow defined the scope of his duties as follows: "to take control of the assets, to manage the company, to protect the interest of policy holders, and to do all things in

25

relation to these duties." [Mem. in Opp'n, 09-31881-EPK DE 55 at 7.] The SVG Insurance Act, under which Mr. Glasgow was appointed, is silent on whether Mr. Glasgow's duty as judicial manager extends to general creditors. The SVG Insurance Act directs Mr. Glasgow to focus on the interests of policyholders. From this, Green Island asks the Court to conclude that other creditors are excluded from the process.

For a proceeding to be collective within the meaning of section 101(23), it must be instituted for the benefit of creditors generally rather than for a single creditor or class of creditors. "A collective proceeding is one that considers the rights and obligations of all creditors. This is in contrast, for example, to a receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *In re Betcorp Ltd*., 400 B.R. 266, 281 (Bankr. D. Nev. 2009). Section 1501 lists the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors" among chapter 15's primary objectives, lending further support to the proposition that a foreign proceeding must be for the general benefit of creditors. *In re Gold & Honey, Ltd*., 410 B.R. 357, 370 n.16 (Bankr. E.D.N.Y. 2009) (quoting 11 U.S.C. § 1501(a)(3)). The Guide to Enactment suggests that a foreign proceeding must contemplate the "involvement of creditors collectively." Guide to Enactment ¶ 23.

From the foregoing, the Court concludes that the word "collective" in section 101(23) contemplates both the consideration and eventual treatment of claims of various types of creditors, as well as the possibility that creditors may take part in the foreign action. Notice to creditors, including general unsecured creditors, may play a role in this analysis. In determining whether a particular foreign action is collective as contemplated under section 101(23), it is appropriate to consider both the law governing the foreign action and the parameters of the

particular proceeding as defined in, for example, orders of a foreign tribunal overseeing the action.

*Bahamas Proceeding*

When deciding whether to appoint a judicial manager under Bahamas law, Section 77(b) of the Bahamas Insurance Act directs the Bahamas Court to consider the effect of the debtor's financial condition on both policyholders and general creditors.  Other provisions of the Bahamas Insurance Act state that BAICO's policyholders have priority over unsecured creditors, but this does not mean that Mr. Lopez, as judicial manager, has no duty to general creditors. While acknowledging the priority accorded to policyholders under Bahamas law, Mr. Lopez testified that he has a duty to general, unsecured creditors as well.

In the December Bahamas Order, the Bahamas Court found that limited reorganization and restructuring, followed by a winding up, "would be most advantageous to the general interest of the policyholders of BAICO, and also for creditors of BAICO," showing that the Bahamas Court considered the interests of creditors other than policyholders.  The December Bahamas Order makes it clear that the Bahamas Court intends to oversee a winding up of BAICO after certain contemplated restructuring transactions.  Section 91 of the Bahamas Insurance Act provides that in a winding up of BAICO "policyholders have a first priority on the assets of the company and shall rank above all unsecured creditors."  Subject to such priority, unsecured creditors obviously are intended to take part in the winding up.

Enacted in 2005, the Bahamas Insurance Act is relatively new.  Neither Green Island nor Mr. Lopez offered any case law interpreting the Bahamas Insurance Act.  Brian Simms, who

testified on behalf of Petitioners as an expert on Bahamas insolvency law,[4] stated that a judicial

manager safeguards the interests of both policyholders and other creditors.  He testified that

actions detrimental to the creditors alone, even if the policyholders are protected, may be

sufficient for appointment of a judicial manager.  The Court found Mr. Simms' testimony

credible.  In light of Mr. Simms' experience in the area of Bahamas insolvency law, including

with insurance companies, the Court found his statements persuasive.  Mr. Simms' testimony

supplements the Court's conclusions based on a review of the relevant provisions of the

Bahamas Insurance Act and orders entered in the Bahamas Proceeding.

Mr. Lopez testified that there will be a claims process when BAICO reaches the winding

up stage.  Although Mr. Lopez is not now soliciting claims, both he and Mr. Simms testified that

Mr. Lopez is accepting claims of unsecured creditors when tendered.

Mr. Lopez acknowledged that there is no current requirement for notice to general

unsecured creditors, either of his appointment or of actions brought before the Bahamas Court.

However, Mr. Lopez testified that upon institution of the winding up phase for BAICO all

policyholders and creditors identified in BAICO's books will receive required notice.  Mr.

Simms testified that Bahamas law allows parties, including creditors, to be heard in the judicial

management process.  He stated that section 82 of the Bahamas Insurance Act provides for

parties to be heard in connection with the judicial manager's recommendations to the Bahamas

Court.

In the Lopez Report, Mr. Lopez repeatedly addresses the interests of general, unsecured

creditors of BAICO.  Mr. Lopez ultimately projects that general creditors of BAICO will receive

---

[4] Fed. R. Civ. P. 44.1, made applicable to this bankruptcy proceeding by Fed. R. Bankr. P. 9017, provides: "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law."

no distribution in the eventual winding up of the company due to the priority accorded to policyholders under Bahamas law. However, by addressing the potential distribution to other creditors Mr. Lopez acknowledges his overall duty to creditors in general.

From the foregoing, the Court concludes that the Bahamas Proceeding is collective in nature and satisfies this prong of the definition of foreign proceeding.

*SVG Proceeding*

Although the SVG Insurance Act provides no guidance on this point, the petition seeking Mr. Glasgow's appointment by the SVG Court [BAICO Ex. 88], the SVG Order of Appointment, and the December SVG Order each contemplate the interests of both policyholders and unsecured creditors. In the petition requesting Mr. Glasgow's appointment, the Supervisor of Insurance stated that the appointment of a judicial manager was in the best interests of BAICO and that of its policyholders and creditors. [BAICO Ex. 88.] In the SVG Order of Appointment, the SVG Court authorized Mr. Glasgow "to pay any class of creditor and any claims, settlement, and expenses in full." [BAICO Ex. 86.] While this language appears in a paragraph addressing a variety of business concerns, including insurance issues, the quoted language is not limited to claims of or against policyholders. The same order empowers Mr. Glasgow to take all appropriate action in pending "legal or arbitration proceedings" by or against BAICO, of any type. In his role as judicial manager, Mr. Glasgow may be involved in litigation relating to claims other than those under BAICO's insurance policies. In the December SVG Order, the SVG Court accepted Mr. Glasgow's findings that the recommended course of action was "most advantageous to the policy-holders and creditors of [BAICO]." [BAICO Ex. 75.] The orders of

the SVG Court make it clear that the court is considering the interests of non-policyholder creditors.

Neither Mr. Glasgow nor Green Island offered case law interpreting the SVG Insurance Act.  Geoffrey Graham Bollers, a lawyer admitted to practice in SVG, testified on behalf of the Petitioners as an expert on SVG insolvency law.  Mr. Bollers stated that Mr. Glasgow, as judicial manager, is charged to safeguard the interests of policyholders and unsecured creditors including trade creditors.  He further testified that the reorganization scheme to be filed by Mr. Glasgow pursuant to the December SVG Order will be subject to input from other parties under the SVG Insurance Act.  Mr. Bollers stated that creditors, including foreign creditors, may file claims. Mr. Bollers' testimony was credible.  In light of Mr. Bollers' experience with insolvency law in SVG, including insolvency of insurance companies, the Court found his statements persuasive. Mr. Bollers' testimony bolsters the other evidence reviewed above.  The SVG Proceeding was instituted for the benefit of creditors generally and contemplates the involvement of creditors collectively.

Based on testimony of Mr. Lopez and Mr. Glasgow, multiple pending foreign actions relating to BAICO are being coordinated through the Bahamas Proceeding for the common benefit of BAICO's policyholders and other creditors.  The SVG Proceeding is part of this unified process.  The Court found that the Bahamas Proceeding is collective as contemplated under section 101(23). These facts support the conclusion that the SVG Proceeding is itself collective in nature.

Based on the foregoing, the Court determines that the SVG Proceeding is collective in nature, satisfying this prong of the definition of foreign proceeding.

2.   Judicial or Administrative

*Bahamas Proceeding*

The Insurance Commission of The Bahamas petitioned the Bahamas Court pursuant to Section 77(1)(b) of the Bahamas Insurance Act for the appointment of Mr. Lopez as judicial manager.  The Bahamas Insurance Act and the orders of the Bahamas Court show that the Bahamas Proceeding is a judicial proceeding.

*SVG Proceeding*

The SVG Supervisor of Insurance petitioned the SVG Court pursuant to Section 52 of the SVG Insurance Act for the appointment of Mr. Glasgow as judicial manager.  The SVG Insurance Act and the orders of the SVG Court show that the SVG Proceeding is a judicial proceeding.

3.   Foreign Country

The Bahamas and SVG are foreign countries.

4.   Under a Law Relating to Insolvency or Adjustment of Debt

Both the Bahamas Insurance Act and the SVG Insurance Act require the relevant court to consider the solvency of the debtor and provide for the adjustment of debt through either a direct winding up or through appointment of a judicial manager.

5.   Debtor's Assets and Affairs Subject to the Control and Supervision of a Foreign Court

*Bahamas Proceeding*

Under section 79 of the Bahamas Insurance Act and the terms of the Bahamas Order of Appointment, Mr. Lopez has control over the assets and affairs of BAICO.  The same section provides that Mr. Lopez acts under the supervision of the Bahamas Court.

*SVG Proceeding*

Under section 53 of the SVG Insurance Act and the terms of the SVG Order of Appointment, Mr. Glasgow has control over the assets and affairs of BAICO in SVG.  The same section provides that Mr. Glasgow acts under the supervision of the SVG Court.

6.   For the Purpose of Reorganization or Liquidation

The phrase "for the purpose of reorganization or liquidation" appears after a comma, at the end of the definition of "foreign proceeding" in section 101(23).  This phrase could relate to one of two concepts in the definition, either the law referenced earlier in the definition, or the subject foreign action itself.  Since the definition of "foreign proceeding" already includes the requirement that the proceeding arise under "a law relating to insolvency or adjustment of debt," it would be redundant to conclude the phrase "for the purpose of reorganization or liquidation" also relates to the law governing the foreign action.  The only reasonable conclusion is that the definition requires that the particular proceeding subject to recognition be "for the purpose of reorganization or liquidation."

*Bahamas Proceeding*

Prior to the February 1, 2010 hearing in this case, Green Island objected to recognition of the Bahamas Proceeding on the ground that it was not for the purpose of reorganization or liquidation.  Under the Bahamas Insurance Act, Mr. Lopez is required to submit a report to the Bahamas Court recommending one of several options outlined in the Bahamas Insurance Act. Bahamas Insurance Act § 81.  The Bahamas Court then has the authority to direct whether the proceeding is one for liquidation, partial sale, or continuation of BAICO's business with or without conditions.  *Id.* § 82.  On the date of the chapter 15 petition here, Mr. Lopez had yet to file his report and the Bahamas Court had issued no order directing reorganization or liquidation. At that time, under the Bahamas Insurance Act, it was possible that the Bahamas Proceeding could be neither a liquidation nor a reorganization; the Bahamas Proceeding could have been limited to an examination of BAICO with no further action required by Mr. Lopez or the Bahamas Court.  Because the Bahamas Court had ordered neither a winding up nor a reorganization of BAICO, on the date of the chapter 15 petition here the Bahamas Proceeding was not "for the purpose of reorganization or liquidation" and therefore was not a "foreign proceeding."

After the filing of the Bahamas Petition, but prior to the February 1, 2010 hearing in this case, the Bahamas Court entered the December Bahamas Order.  By the December Bahamas Order, the Bahamas Court accepted the core findings of Mr. Lopez that BAICO is insolvent and should be reorganized and restructured where possible and then wound up.  In that order, the Bahamas Court directed Mr. Lopez: (1) to continue to negotiate with third parties to sell, transfer, or dispose of the insurance business, or other assets and liabilities of the branches and subsidiaries of BAICO; (2) to transfer or sell the shares of BAT; (3) to take steps to protect the

33

assets of BAICO and its subsidiaries in the United States by obtaining recognition of the

Bahamas Proceeding; (4) to effect the winding-up of BAICO's non-insurance subsidiaries; (5) to

investigate related party and other antecedent transactions, the conduct of management and the

directors of BAICO, and the conduct of third parties providing services to and conducting

transactions with BAICO; (6) to commence legal proceedings against CL Financial in respect of

sums presently due to BAICO; (7) to investigate the assets and liabilities of BAICO's Employee

Pension Plan; and (8) to effect the transfer of data and systems from Trinidad to a new

administrative hub.  [BAICO Ex. 106.]  The Bahamas Court determined that these actions should

"take place prior to the commencement of formal winding-up proceedings" and ordered that

these actions be taken "to simplify the eventual winding-up of BAICO."  After entry of the

December Bahamas Order, it appears without question that the Bahamas Proceeding is for the

purpose of partial reorganization followed by liquidation.

      At the continued evidentiary hearing on February 1, 2010, Green Island abandoned its

argument that the Bahamas Proceeding was not for the purpose of reorganization or liquidation

as of the chapter 15 petition date.  Although not stated at the hearing, Green Island likely realized

that in light of the December Bahamas Order a determination not to recognize the Bahamas

Proceeding on this ground would have resulted only in a delay while Mr. Lopez filed a new

chapter 15 petition.

      In any case, when determining whether a particular proceeding is for the purpose of

reorganization or liquidation, it is appropriate for the Court to consider circumstances arising

after the filing of the chapter 15 petition.  If facts change after the petition date such that a

foreign action formerly for the purpose of reorganization or liquidation loses such status, the

Court would decline to recognize such a proceeding.  The same logic should apply when, as

34

here, the proceeding has become for the purpose of reorganization or liquidation after the chapter 15 petition date.  This approach is consistent with the nature of the recognition process contemplated in sections 1518(1) and 1517(d), which allow for the court to adjust its ruling based on circumstances arising after recognition.

Based on the foregoing analysis, the Court determines that the Bahamas Proceeding satisfies all six components of the definition of "foreign proceeding" under the Bankruptcy Code.


*SVG Proceeding*

Under the SVG Insurance Act, Mr. Glasgow is required to submit a report to the SVG Court recommending one of several options outlined in the SVG Insurance Act.  SVG Insurance Act § 54(1).  The SVG Court is not bound to accept Mr. Glasgow's recommendation.  *Id.* § 55(1)(b).  The SVG Court then has the authority to direct whether the proceeding is one for liquidation, partial sale, or continuation of BAICO's business with or without conditions.  On or about October 9, 2009, Mr. Glasgow submitted the Glasgow Report to the SVG Court as required by the SVG Insurance Act.  About six weeks later, on November 23, 2009, Mr. Glasgow filed the SVG Petition with this Court.  On the date of the chapter 15 petition here, the SVG Court had issued no order directing reorganization or liquidation.  As of that date, under the SVG Insurance Act, it was possible that the SVG Proceeding could be neither a liquidation nor a reorganization; the SVG Proceeding could have been limited to an examination of BAICO with no further action required by Mr. Glasgow or the SVG Court.  Because the SVG Court had ordered neither a winding up nor a reorganization of BAICO, on the date of the chapter 15 petition here the SVG Proceeding was not "for the purpose of reorganization or liquidation" and therefore was not a "foreign proceeding."

35

About four weeks after Mr. Glasgow filed the SVG Petition, on or about December 18, 2009, the SVG Court entered the December SVG Order. The December SVG Order accepted Mr. Glasgow's recommendations and directed a reorganization of BAICO pursuant to a scheme, or plan of reorganization, to be filed by Mr. Glasgow. The SVG Court ordered, pursuant to section 54(2) of the SVG Insurance Act, that: (1) there be a reorganization of BAICO by the transfer of its insurance and investment business to a new company in pursuant of a scheme of arrangement to be prepared in accordance with section 56 of the SVG Insurance Act; (2) the scheme prepared in accordance with the SVG Insurance Act be a plan making provision for the funding of a new company; (3) Mr. Glasgow is authorized to work with other judicial managers or persons similarly appointed, the governments of the Organisation of Eastern Caribbean States, and the Eastern Caribbean Central Bank, to develop such a scheme and make arrangements for any required funding; (4) Mr. Glasgow shall consider and do all things necessary with respect to the establishment of the new company and the transfer of assets and liabilities of BAICO into the new company; and (5) Mr. Glasgow is to continue to negotiate with third parties to sell or dispose of BAICO's property and health insurance business and to take such action that may be required to effect such sales or disposals subject to the approval of the SVG Court.

As with the Bahamas Proceeding, Green Island no longer argues that the timing of the December SVG Order, entered the month following the SVG Petition here, necessitates denial of recognition. The Court considers the impact of the December SVG Order, even though entered after the chapter 15 petition date, for the same reasons stated above in connection with the Bahamas Proceeding. Instead, Green Island argues that the SVG Proceeding pertains to only one of BAICO's branch operations, that the SVG Proceeding cannot by itself result in a reorganization or liquidation of BAICO as a whole, and that the SVG Proceeding is thus not for

the purpose of reorganization or liquidation.  In short, Green Island argues that for a foreign action to be recognized under chapter 15 it must have comprehensive impact on the debtor such that it could result in an overall reorganization or winding up of the debtor.

Green Island's reading of the requirement that the proceeding be for the purpose of reorganization or liquidation is unduly narrow.   Chapter 15 recognizes that the scope of a foreign nonmain proceeding may be less than all encompassing.  Section 1521(c) directs the bankruptcy court to take into account the potential limited impact of the foreign nonmain proceeding in fashioning post-recognition relief.  If the court were to recognize a foreign nonmain proceeding only where the proceeding, by itself, could result in a wholesale reorganization or liquidation of the debtor, section 1521(c) would be unnecessary.

It is possible that a foreign nonmain proceeding could be the center of a complete restructuring or liquidation of a debtor.  This may occur, for example, where the proceeding is pending in the country of the debtor's formation, that country's law allows for a comprehensive reorganization or winding up based solely on the debtor's formation there, the debtor maintains some non-transitory economic activity in that country, but the debtor's center of main interest is elsewhere.  Based on Green Island's argument, this is the only instance where a bankruptcy court should recognize a foreign nonmain proceeding.

Green Island's restricted view would deny recognition to the majority of potential nonmain proceedings.  A foreign main proceeding, by definition pending in the country where the debtor has its center of main interest, is likely the primary tool for a reorganization or liquidation of the debtor.  A foreign nonmain proceeding for the same debtor is most likely ancillary to the foreign main proceeding, intended to address operations, assets, and liabilities in the country where the foreign nonmain proceeding is pending.  In many international insolvency

matters, both types of proceedings are necessary to obtain a comprehensive reorganization or liquidation of the debtor. Consistent with the objective of "fair and efficient administration of cross-border insolvencies," 11 U.S.C. § 1501(a)(3), chapter 15 contemplates recognition of no more than one main proceeding and any combination of nonmain proceedings for the same debtor. To require that each of these foreign proceedings, main and nonmain, be able to result in a global reorganization or liquidation is not consistent with the structure of chapter 15.

Based on the foregoing analysis, the Court determines that the SVG Proceeding satisfies all six components of the definition of "foreign proceeding" under the Bankruptcy Code.

## B. Foreign Main Proceeding

Mr. Lopez requests that the Court recognize the Bahamas Proceeding as a foreign main proceeding. The term "'foreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). The concept "center of its main interests" is often shortened to "COMI." "In the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). Because there is substantial evidence in this case that BAICO's COMI is not in the Bahamas, the presumption under section 1516(c) is rebutted here. Mr. Lopez bears the burden of proof to establish BAICO's COMI. *In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006).

Neither the Bankruptcy Code nor the Guide to Enactment define COMI. Several courts have likened COMI to the "principal place of business" concept under United States law. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd*., 374 B.R. at 129

(citation omitted).  United States case law exhibits a developing consensus on the factors for determination of a debtor's COMI.  Courts typically consider the following:

     1.  The location of the debtor's headquarters;

     2.  The location of those who actually manage the debtor (which may be the headquarters of a holding company);

     3.  The location of the debtor's primary assets;

     4.  The location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and

     5.  The jurisdiction whose law would apply to most disputes.

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 128 (citation omitted).  These are not exclusive factors, nor must they all be met in each case.

Courts also consider the expectations of third parties with regard to the location of a debtor's COMI.  The Guide to Enactment explains that the Model Law concept of COMI comes from the European Union Convention on Insolvency Proceedings.  Guide to Enactment ¶ 31; *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 129. The European Union Convention on Insolvency Proceedings describes COMI as "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties."  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 129 (quoting Council Reg. (EC) No. 1346/2000, P 13). Similarly, under chapter 15, "it is important that the debtor's COMI be ascertainable by third parties."  *In re Betcorp Ltd.*, 400 B.R. 266, 291 (Bankr. D. Nev. 2009).  "COMI is affected not only by what a debtor does, but by what a debtor is perceived as doing."  *Id.* (citation omitted).

Because the location of a debtor's COMI may change over time, the Court must determine the date on which to apply the COMI analysis.  The Petitioners ask the Court to

determine COMI as of the filing of their Petitions with this Court. Green Island suggests that the determination should be made as of the date each Petitioner was appointed in the underlying foreign proceedings or, alternatively, that the Court should consider the operational history of BAICO prior to the appointment of the Petitioners in the Bahamas and SVG.

Two bankruptcy courts have addressed the timing of the COMI determination in detail. In each case, the court determined that COMI should be analyzed as of the date of the chapter 15 petition. *In re Betcorp* involved an internet gambling business organized in and operated from Australia but that did business primarily with residents of the United States. 400 B.R. 266 (Bankr. D. Nev. 2009). The liquidator in a voluntary winding up under Australia law requested recognition so as to obtain a stay of litigation in the United States, among other things. The objecting creditor argued that the bankruptcy court should consider the operational history of Betcorp, pointing to Betcorp's substantial course of business in the United States prior to the liquidation proceeding and the presence of a significant creditor here. In rejecting a historical analysis for the COMI determination, the *Betcorp* court expressed concern for the possibility of conflicting COMI determinations in various countries arising from different analyses of a debtor's historical activities. At the time of the chapter 15 petition in *Betcorp*, the Australian liquidator had been in place for more than a year, the debtor had no employees other than those retained by the liquidator, and the liquidator had possession of the debtor's only asset, cash in an Australian bank account. Even if Betcorp's COMI had at some prior time been located outside Australia, it had moved to Australia in the substantial time after the liquidator's appointment.

The *Betcorp* decision cites extensively to another bankruptcy court opinion, *In re Ran*, 390 B.R. 257 (Bankr. S.D. Tex. 2008), *aff'd*, *Lavie v. Ran*, 406 B.R. 277 (S.D. Tex. 2009). The petitioner in *Ran*, an Israeli bankruptcy trustee, argued that the United States bankruptcy court

should consider Mr. Ran's historical ties to Israel, and find his COMI in Israel, in spite of the

fact that Mr. Ran had lived in the United States for more than a decade and had no interests in

Israel at the time of the chapter 15 petition.  In ruling that the chapter 15 petition date is the

appropriate time for the COMI determination, as in *Betcorp*, the *Ran* court based its decision

primarily on a desire to maintain international uniformity in the determination of a debtor's

COMI.

Chapter 15 itself provides guidance on the temporal focus of the COMI analysis.  Under

section 1517(b)(1), a foreign proceeding is recognized "if it <u>is</u> pending in the country where the

debtor <u>has</u> the center of its main interests."  (emphasis added).  This phrase is stated in the

present tense.  A chapter 15 case is commenced by the filing of a petition for recognition under

section 1504.  The present, for purposes of a court making a determination under section

1517(b)(1), can be no earlier than the date the chapter 15 petition was filed.

The text of chapter 15 supports making the COMI determination as of the date the court

rules on the issue.  Section 1518(1) requires that after recognition a foreign representative must

promptly file notice with the court of "any substantial change in the status of such foreign

proceeding or the status of the foreign representative's appointment."  Section 1517(d)

authorizes the court to modify or terminate recognition based on changed circumstances.  These

provisions exhibit a policy that the recognition process remain flexible, taking into account the

actual facts relevant to the court's decision rather than setting an arbitrary determination point.

In light of these provisions, if the location of a debtor's COMI changes between the date a

chapter 15 petition is filed and the date a court makes a determination on recognition, the court

may look to the facts on the latter date for purposes of COMI.

Selecting the latest possible date for the COMI analysis is consistent with the aim of international uniformity stressed in *Ran* and *Betcorp*. Over time, the circumstances affecting recognition may change. Guide to Enactment ¶ 130. If all recognition proceedings, wherever pending, consider the latest available evidence, there is a greater likelihood that the appropriate foreign main and foreign nonmain proceedings will be recognized as such in a consistent manner.

In the present case, the facts relevant to the determination of COMI remained essentially unchanged from the date of the Bahamas Petition through the close of the presentation of evidence.

The Court first considers evidence with regard to the location of BAICO's headquarters. Mr. Lopez argues that BAICO's headquarters is in the Bahamas because Mr. Lopez is in the Bahamas. Mr. Lopez oversees BAICO's business activity under the Bahamas Order of Appointment, has legal custody and control over BAICO's business records (but not necessarily physical custody), and makes all high level business decisions for BAICO from his office in the Bahamas. The Bahamas Order of Appointment empowers Mr. Lopez to take certain actions such as hire and fire employees, remit salaries, incur and pay expenses for the running, administration and management of BAICO's affairs and offices, and generally carry on all or any part of BAICO's business so far as may be necessary to preserve the value of BAICO. The evidence shows that Mr. Lopez's activities since appointment include the retention of numerous lawyers and accountants, the investigation of assets and liabilities of BAICO, the preparation and filing of the Lopez Report, and overseeing the sale of certain of BAICO's assets. BAICO's entire board of directors resigned prior to Mr. Lopez's appointment as judicial manager. Mr. Simms testified that Mr. Lopez effectively replaced the board of directors of BAICO.

The headquarters of a corporate entity is more than the location of its board of directors. The term headquarters, or head office, contemplates the place where the primary management of an entity's business is undertaken.  Management of a corporate entity includes all relevant business functions, such as the financial, administrative, marketing, information technology, investment, and legal functions.  Other functions may be relevant depending on the nature of the debtor's business.  Here, because BAICO operated as an insurance company, actuarial tasks, underwriting, and claims adjustment should be considered.

The overwhelming evidence presented in this case shows that BAICO's headquarters is not in the Bahamas.  In 2005, long prior to the commencement of the Bahamas Proceeding, BAICO entered into the Services Agreement with BA Management, a wholly-owned subsidiary of BAICO located in Trinidad.  Under the Services Agreement, BAICO outsourced essentially all of its central management to BA Management.  These functions include all financial, administrative, marketing, information technology, investment, actuarial, legal, policy administration, and claims processing for BAICO.  BA Management continues to perform all of the same functions for BAICO.  Although he plans to move these services to the Bahamas, Mr. Lopez's own report states that BAICO's administrative hub remains in Trinidad.  [BAICO Ex. 103 at 216.]  The Glasgow Report confirms this fact, going so far as to describe the SVG branch as a "local branch sales and administrative unit supported by a group service company, [the Trinidad Subsidiaries]."  [BAICO Ex. 77 at 58.]

In spite of the breadth of management tasks delegated to BA Management, the Petitioners try to distance BAICO from Trinidad.  They argue that BAICO has no branch operations in Trinidad, where it acts only through subsidiaries, that BAICO itself does not have an insurance license in Trinidad, and that BAICO has no physical assets in Trinidad in its own name.

Petitioners ask the Court to ignore the Services Agreement, and the fact that BA Management continues to perform nearly all central business functions of BAICO, on the ground that BAICO undertakes these functions through an agent, BA Management, rather than in its own name.  This arrangement is not unusual.  BA Management is a wholly-owned subsidiary of BAICO, which is in turn owned almost entirely by CL Financial.  Both CL Financial and BA Management are located in Trinidad.  It is not surprising that CL Financial centralized all of BAICO's management tasks near CL Financial's own place of business.  It is also not surprising that CL Financial did not set up BAICO's management hub in the Bahamas.  For a significant time prior to Mr. Lopez's appointment, BAICO had no tie to the Bahamas other than was absolutely necessary to maintain its corporate existence and insurance license.  The Court is not troubled by the fact that BAICO acted and continues to act primarily through a subsidiary.  By its nature, a corporate entity must carry out its business through employees or agents.  It makes no difference that the agent in this case is another corporate entity, and a subsidiary of BAICO, or that BA Management's employees undertake such tasks for BAICO.  Indeed, it appears that BA Management's sole purpose was to perform management tasks for BAICO and its related entities to obtain a positive tax benefit for BAICO.

Next, the Court considers the location of those who actually manage BAICO.  While a corporate entity is overseen by a board of directors, in larger organizations the day to day management typically is undertaken by others.  A board of directors provides guidance and oversight; others operate the business.  The evidence addressed immediately above in review of BAICO's headquarters is equally relevant here.  While Mr. Lopez acts in place of a board of directors for BAICO, all of the day to day activity, including all of the primary business functions, remains in Trinidad.  Employees of BA Management continue to manage the affairs of

44

BAICO under the terms of the Services Agreement. Mr. Lopez supervises those functions. As suggested in the Lopez Report, Mr. Lopez may in the future move BAICO's administration to the Bahamas. In the meantime, the primary management activities of BAICO continue to take place in Trinidad. For the reasons stated above, it does not matter that these functions are performed through the employees of a wholly-owned corporate agent.

The Court also considers the location of BAICO's primary assets. From the undisputed evidence presented in the Lopez Report, the majority of BAICO's assets is located in the EC Branches and not in the Bahamas.

The Court considers the location of the majority of BAICO's creditors and the jurisdiction whose law would apply to most disputes. The Lopez Report shows that more than 77% of BAICO's liabilities are associated with the EC Branches. About 21% of BAICO's liabilities are associated with "BAICO stand-alone" in part because BAICO's books do not allow attribution to any particular branch or subsidiary. BAICO has not written insurance policies in the Bahamas since 1997. Since that time, BAICO wrote policies and conducted business in numerous Caribbean countries other than the Bahamas. Prior to Mr. Lopez's appointment, BAICO's activities in the Bahamas were limited to those acts necessary to maintain its corporate existence and licensing. The Court concludes that BAICO's creditors exist primarily outside the Bahamas. Because BAICO did not do business in the Bahamas for an extended period of time, and BAICO's creditors exist mostly outside the Bahamas, it is unlikely that creditors would bring suit in the Bahamas. From the evidence presented, it appears that policyholders and other creditors dealt with local branch offices and subsidiaries, outside the Bahamas, have been directed after Mr. Lopez's appointment to continue to deal with their local offices, and likely

would pursue any claims in the locations of those offices. It appears unlikely that the law of the Bahamas would govern most disputes.

The location of a debtor's COMI should be readily ascertainable by third parties. For an extended period prior to Mr. Lopez's appointment, BAICO did not issue policies in the Bahamas or to Bahamas residents, it had no bank accounts in the Bahamas, BAICO's claims adjustment and processing took place entirely outside the Bahamas, and it had no directors or employees in the Bahamas. From the perspective of policyholders and creditors, little changed after Mr. Lopez's appointment. When Mr. Lopez was appointed, he updated the BAICO web site to reference his appointment and informed regulators and certain other parties of his appointment. To facilitate performance of his duties as judicial manager, he opened bank accounts for BAICO in the Bahamas and retained counsel and accountants. Based on the evidence presented, including the Lopez Report, policyholders and creditors continue to deal with their local branch offices and BAICO subsidiaries, all in countries other than the Bahamas. Mr. Lopez's notice on the BAICO web site directs parties to deal with their local offices, outside the Bahamas. There is little reason for BAICO's policyholders and other creditors to believe BAICO has its center of main interest—the hub of its business operations—in the Bahamas.

Mr. Lopez argues that the Court may determine BAICO has its COMI in the Bahamas based on BAICO's insurance license and registration in the Bahamas, the regulation of BAICO in the Bahamas, Mr. Lopez's appointment and the broad powers conferred on him in the Bahamas Order of Appointment, and his initial activity as judicial manager including the retention of professionals, investigatory work, and the Lopez Report. The petitioners in *Bear Stearns* made similar arguments.

The debtors in *Bear Stearns* had no employees or managers in the Cayman Islands, where the liquidation proceeding was pending. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 389 B.R. 325, 337-38 (S.D.N.Y. 2008) (citation omitted). A New York investment manager managed the debtors' affairs. All of the debtors' administrative functions took place in the United States rather than the Cayman Islands. All of the debtors' books and records, other than required corporate records, were maintained in the United States. Prior to the petitioners' appointment in the Cayman Islands, all of the petitioners' liquid assets were located in the United States, although the petitioners redirected the debtors' funds to accounts in the Cayman Islands after their appointment. Other than related entities, the petitioners' sole investor was a United Kingdom entity. Accounts due to the debtors were located outside the Cayman Islands. None of the debtors' contract counterparties were located in the Cayman Islands. *Id*. Evidence of pre-appointment legal and auditing work in the Cayman Islands did not sway the court. Based primarily on these facts, the court in *Bear Stearns* declined to recognize the Cayman Islands proceeding.

The facts presented by Mr. Lopez in this case are substantially identical to those presented in *Bear Stearns*. BAICO had no directors, managers, or other employees in the Bahamas at the time of Mr. Lopez's appointment. A Trinidad based, wholly-owned subsidiary managed BAICO's affairs and still does. Other than the location of its registered office, limited professional representation, and Mr. Lopez's oversight, all of BAICO's administrative functions take place in Trinidad rather than in the Bahamas. None of BAICO's books and records, other than required corporate records, were maintained in the Bahamas. Prior to Mr. Lopez's appointment, none of BAICO's liquid assets were located in the Bahamas, although he established accounts in the Bahamas after his appointment. There is no evidence to show that

BAICO has any material creditors in the Bahamas.  Other than Mr. Lopez's appointment,

BAICO's contacts with the Bahamas are limited to those necessary to retain its charter and

insurance license.

The petitioners in *Bear Stearns* were "exempted" companies under Cayman Islands law,

a status that prevented them from doing business with parties within the Cayman Islands.  *In re*

*Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 132

(Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (2008) (citing Companies Law (2004 Revision) of

the Cayman Islands § 193).  BAICO simply did not do business in the Bahamas.  There is no

difference for purposes of the COMI determination.

Mr. Lopez argues that BAICO is subject to Bahamas insurance regulation law and should

be restructured and wound up in the Bahamas.  Mr. Lopez states that upon his appointment he

supplanted BAICO's board of directors and all corporate control was ceded to him.  Like the

court in *Bear Stearns*, this Court finds that "[t]hese allegations do not constitute substantive

economic activity" in the Bahamas.  *In re Bear Stearns High-Grade Structured Credit Strategies*

*Master Fund, Ltd.*, 389 B.R. at 338; *accord In re SPhinX, LTD.*, 351 B.R. 103, 119 (Bankr.

S.D.N.Y. 2006) ("In light of the foregoing principles, important objective factors point to the

SPhinX Funds' COMI being located outside of the Cayman Islands. As far as the administration

of the Debtors' interests is concerned, the SPhinX Funds' hedge fund business was conducted by

PlusFunds outside of the Cayman Islands, as were most of the SPhinX Funds' back-office

operations, by DPM. The only business done in the Cayman Islands apparently was limited to

those steps necessary to maintain the SPhinX Funds in good standing as registered Cayman

Islands companies and certain SPhinX Funds as SPCs. There were no employees or managers in

the Cayman Islands, and the Debtors' boards, which contained no Cayman Islands residents, never met in the Cayman Islands.")

Based on the facts presented, the Court determines that BAICO's formation and regulation in the Bahamas and Mr. Lopez's actions as judicial manager do not constitute sufficient acts to establish BAICO's COMI in the Bahamas. The Court does not conclude that the actions of a foreign representative, such as the judicial manager here, could never be considered evidence in support of a finding of COMI. There may be instances where a foreign representative remains in place for an extended period, and relocates all of the primary business activities of the debtor to his location (or brings business to a halt), thereby causing creditors and other parties to look to the judicial manager as the location of a debtor's business. This could lead to the conclusion that the center of its main interest has become lodged with the foreign representative. The court in *Betcorp* considered similar facts in determining that a debtor's COMI was in the place where the liquidation was pending. *In re Betcorp Ltd.*, 400 B.R. 266, 292-93 (Bankr. D. Nev. 2009). While Mr. Lopez could take action to move BAICO's COMI to the Bahamas, and it appears from the Lopez Report that he may do so, he has not done so yet. The primary components of BAICO's business, which directly touch policyholders and other creditors, still occur entirely outside the Bahamas.

For the foregoing reasons, the Court determines that BAICO does not have the center of its main interest in the Bahamas and the Bahamas Petition is not a foreign main proceeding.

**C.  Foreign Nonmain Proceeding**

*Bahamas Proceeding*

In the alternative, Mr. Lopez requests that this Court recognize the Bahamas Proceeding

as a foreign nonmain proceeding.  The term "'foreign nonmain proceeding' means a foreign

proceeding, other than a foreign main proceeding, pending in a country where the debtor has an

establishment."  11 U.S.C. § 1502(5).  "'[E]stablishment' means any place of operations where

the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).  "Establishment"

has been described as a "local place of business."  *In re Bear Stearns High-Grade Structured*

*Credit Strategies Master Fund, Ltd*., 374 B.R. at 131.  To further define establishment, courts

look to the Model Law and the sources used to promulgate it.  "Per the [European Union's

Convention on Insolvency Proceedings]'s legislative history, a 'place of operations' referred to

'a place from which economic activities are exercised on the market (i.e. externally), whether the

said activities are commercial, industrial or professional.'"  *Lavie v. Ran*, 406 B.R. 277, 284

(S.D. Tex. 2009) (citing Council, Report on the Convention on Insolvency Proceedings, at 49,

No. 6500/96).

Unlike with the determination of COMI, chapter 15 provides no evidentiary presumption

in connection with the determination of whether a debtor has an establishment in a particular

jurisdiction.  The petitioner has the burden of proof on whether a debtor has an establishment in

the country of the foreign proceeding.

Whether the debtor has an "establishment" in a country must be determined at the time of

the filing of the chapter 15 petition.

> The use of the present tense [in section 1502(5) and section 1502(2)] implies that
> the court's establishment analysis should focus on whether the debtor has an
> establishment in the foreign country when the foreign representative files for
> recognition under Chapter 15 . . . .  Because courts undertake the establishment

analysis when the foreign representative files for recognition, it follows that the court should weigh only the evidence as it exists at the time of filing in the U.S. court.

*Lavie v. Ran*, 406 B.R. at 284-85.

To have an establishment in a country, the debtor must conduct business in that country. The location should constitute a "seat for local business activity" for the debtor. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 131. The terms "operations" and "economic activity" require showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property.

It is undisputed that at the time of the Bahamas Petition, BAICO had no business operation in the Bahamas other than the judicial manager's activities pursuant to his appointment. BAICO does not presently do business in the Bahamas. Mr. Lopez's retention of counsel and accountants, investigation of assets and liabilities, and reporting to the Bahamas Court, do not constitute business activities of BAICO. The court in *Bear Stearns* rejected this same argument in finding that the petitioners failed to prove an establishment in the Cayman Islands. 389 B.R. at 339*; accord Lavie v. Ran*, 406 B.R. 277, 286 (S.D. Tex. 2009) ("From the outset, it stretches credulity to view a bankruptcy proceeding as an industrial or professional activity . . . . Further, though a bankruptcy proceeding does pertain to economic matters, it does not comport with traditional notions of economic activity in the marketplace.")

As one court observed, finding an establishment based solely on the existence of an insolvency proceeding poses two problems.

First, by definition, an insolvency proceeding is a transitory action. WEBSTER'S NEW INTERNATIONAL DICTIONARY 2692 (2d ed. 1939) (defining "transitory action" as "[a]n action which may be brought in any county, [such] as actions for debt, etc."). Transitory actions are tied to the person, rather than a location. *See* BLACK'S LAW DICTIONARY 34 (8th ed. 2004) (observing that transitory actions are "universally founded on the supposed violation of rights

51

which, in contemplation of law, have no locality"). In stark contrast, the concept of establishment is location-oriented, in that it focuses on the "place of operations" in which the activity occurs. It would seem an odd result to permit a transitory action to suffice as the basis for finding nontransitory economic activity.

Second, if the proceeding and associated debts, alone, could suffice to demonstrate an establishment, it would essentially rule out the possibility that any proceeding would fall into the third, more nebulous category of proceedings that are neither foreign main nor foreign nonmain. But, this third category was clearly envisioned by the drafters. Therefore, such an interpretation would be contrary to statutory intent and thus violate a key canon of statutory interpretation.

*Lavie v. Ran*, 406 B.R. at 286-87.

The Court determines that BAICO does not have an establishment in the Bahamas and thus does not recognize the Bahamas Proceeding as a foreign nonmain proceeding.


*SVG Proceeding*

At the February 1, 2010 hearing, Green Island conceded that the SVG proceeding is pending in a country where BAICO has an establishment as defined in chapter 15. The evidence shows that BAICO has property in SVG where it conducts business, retains employees at its SVG branch who perform insurance business activity, maintains accounts in SVG relating to its insurance business in that country, and has existing policyholders in SVG. BAICO is involved in financial transactions in the local SVG market. BAICO has a place of operations in SVG where it conducts non-transitory economic activity. Consequently, the Court will recognize the SVG Proceeding as a foreign nonmain proceeding.

## IV.  ORDER

Accordingly, it is ORDERED that:

1.      The request for recognition of the Bahamas Proceeding as a foreign main proceeding or, in the alternative, a foreign nonmain proceeding, is DENIED.

2.      The request for recognition of the SVG Proceeding as a foreign nonmain proceeding is GRANTED.

3.      Petitioner for the SVG Proceeding requested relief under 11 U.S.C. § 1521.  The Court will conduct a further hearing to address such request.  Pursuant to 11 U.S.C. § 1521(a)(6), the interim relief previously granted under 11 U.S.C. § 1519 will remain in effect subject to order of the Court.

###

Copies to:
Leyza F. Blanco, Esq.

*Leyza F. Blanco, Esq. is directed to serve a conformed copy of this order on all parties in interest and to file a Certificate of Service attesting to such service.*